IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: TDC-15-3185 |
| **JOHN DOE,** | * | |
| Defendant. | * | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Entry of Default Judgment ("Plaintiff's Motion") (ECF No. 29) filed by Malibu Media, LLC ("Plaintiff"). On October 20, 2015, Plaintiff brought this action against John Doe ("Defendant") for copyright infringement under 17 U.S.C. §§ 101 *et seq*. ECF No. 1. Plaintiff alleges that Defendant used a file-sharing system to illegally distribute copyrighted materials owned by Plaintiff. (*See* Am. Compl., ECF No. 11, ¶ 3). The Clerk of the Court entered default against Defendant on March 22, 2017. ECF No. 27. Pursuant to 28 U.S.C. Section 636, and Local Rules 301 and 302, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning default judgment and/or damages. ECF No. 30.

The Court held a hearing on October 19, 2017, (the "Hearing"), addressing Plaintiff's Motion as it related to the award of attorneys' fees. The Court also allowed Plaintiff additional time to supplement the record. Of continuing concern are the business practices set forth by trial counsel ("Counsel") in the Declaration of Jon A. Hoppe, Esq. In Support of Motion for Entry of

Default Judgment Against [John Doe] (ECF No. 29-5) ("Counsel's Declaration"), Counsel's statements at the hearing and subsequent research.

It is my recommendation that the Court enter default judgment, GRANT Plaintiff's requested statutory damages in the amount of $24,000 as well as its request for permanent injunctive relief. However, I recommend that Plaintiff's request for attorney's fees be denied for the reasons set forth herein.

## I. Procedural History and Background

The Amended Complaint asserts that Plaintiff holds the copyrights to various adult films. Am. Compl., ECF No. 11, ¶ 1; Ex. 2. Individuals can access these films through a website, X-Art.com, which Plaintiff operates. Mot. for Leave, Field Decl. ¶¶ 3, 12, ECF No. 2-2. In order to access these films, Plaintiff's customers pay a subscription fee of $24.95 per month or $99.95 per year. *Id.* ¶ 12. Plaintiff alleges that many of its films are infringed upon using a file distribution network known as BitTorrent. *Id.* ¶ 16.

Plaintiff identifies BitTorrent as a peer-to-peer file sharing system used to distribute all manner of electronic content. Am. Compl. ¶ 10, ECF No. 11. Plaintiff alleges that Defendant used the BitTorrent network to download, copy, and distribute at least one bit from each of Plaintiff's sixteen copyrighted works listed in the Amended Complaint. *Id.* ¶ 19; ECF No. 11-1. Defendant did not respond to these allegations. In reviewing Plaintiff's Motion, this Court identified certain shortcomings in Counsel's Declaration, leading this Court to hold the Hearing and ordering Counsel to provide additional documentation to support its request for attorney's fees.

## II. Discussion

### A. Statutory Damages

Plaintiff requests statutory damages in the amount of $1,500 per video, for a total of $24,000. In lieu of actual damages and profits, a plaintiff may recover "an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just;" for willful violations, the Court may increase the award of statutory damages to a sum of not more than $150,000." *See* 17 U.S.C. § 504(c)(1)–(2). "A district court has 'wide discretion' and is 'not required to follow any rigid formula' in setting damages within the statutory range. *PHE, Inc. v. Does 1-122*, Case No. 13-cv-786, 2014 WL 1856755, at *2 (N.D. Ill. May 7, 2014) (citing *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991)). For the reasons that follow, I recommend granting Plaintiff's Motion for statutory damages in the amount of $1,500 per video, for a total of $24,000.

In setting a statutory damages award in similar cases, courts have considered a variety of factors, including (1) whether the defendant was the original provider of the infringed content to its distribution network; (2) whether, and how much, the defendant profited or saved in connection with the infringement; (3) the plaintiff's actual losses; (4) the deterrent effect of statutory damages; and (5) the defendant's willfulness and intent in infringing the plaintiff's protected content. *See, e.g.*, *Malibu Media, LLC v. Flanagan*, Civ. Ac. No. 2:13-cv-5890, 2014 WL 2957701, at *4 (E.D. Pa. July 1, 2014) (considering factors 1, 2, 3, and 4); *Malibu Media, LLC v. Goodrich*, Civ. Ac. No. 12-cv-013940-WYD-MEH, 2013 WL 6670236, at *11 (D. Colo. Dec. 18, 2013) (considering factor 5); *Malibu Media, LLC v. Cowham*, No. 3:13-cv-00162-PPS-CAN, 2014 WL 2453027, at *2 (N.D. Ind. June 2, 2014) (considering factors 3 and 4).

These factors, along with careful consideration of previous courts' deliberations, weigh in favor of granting Plaintiff's request here for reasonable statutory damages. While Plaintiff is

unable to provide evidence that Defendant was the original provider of the infringed content or profited in any way from the infringement, I am persuaded by Plaintiff's uncontested assertions that Plaintiff suffered losses in the form of lost business (through subscriptions or otherwise) and that a reasonable award of $1,500 per infringed work would have a deterrent effect on Defendant and potential future infringers. Additionally, while Plaintiff could have chosen to seek the upper echelon of the statutory limits, Plaintiff's "request of $1,500 per work is, in fact, on the low end of the statutory scale and is also in line with damages awarded in similar circumstances." *Cowham*, 2014 WL 2453027, at *2; *see also, e.g.*, *Flanagan*, 2014 WL 2957701, at *4 (granting an award of $1,500 per infringement); *Malibu Media, LLC v. Brenneman*, No. 3:13-332-PPS-CAN, 2013 WL 6560387, at *3 (N.D. Ind. Dec. 13, 2013) (likewise granting an award of $1,500 per infringement); and *PHE, Inc.*, 2014 WL 1856755, at *3. Because Plaintiff chose not to seek a higher amount per infringement, the issue of willfulness need not be discussed.

Having considered the relevant factors and applicable case law, I recommend that the Court grant Plaintiff's request for statutory damages in the amount of $1,500 per film, for a total of $24,000.

### B. Injunctive Relief

Plaintiff requests injunctive relief in the form of: (1) "permanently enjoin[ing] Defendant. . . from continuing to infringe Plaintiff's copyrighted works;" and, (2) that Defendant "delete and permanently remove" the digital media files relating to Plaintiff's work and infringing copies of the works on any computer "under Defendant's possession, custody or control." ECF No. 11, ¶ 6. Injunctions have been found appropriate "against Defendants who have engaged in unlawful downloads to ensure the misconduct does not recur." *Flanagan*, 2014 WL 2957701, at *5 (citing *Virgin Records Am., Inc. v. Bagan,* 2009 WL 2170153, at *5 (D.N.J. July 21, 2009)). Likewise, federal copyright

4

laws give discretion to the Court to order the impounding of copyrighted works. 17 U.S.C. § 503(a). However, "[to] obtain such an injunction, a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010)).

I am persuaded that Plaintiff has met its burden of showing cause for injunctive relief. Here, Plaintiff has shown that it will suffer "irreparable injury," as the presence of the copyrighted works in Defendant's possession can continue to be available to others via the BitTorrent network. It is clear that the balance of hardships favors Plaintiff, as Defendant's only hardship in the present case is in deleting the infringed-upon works. Finally, the public interest in enforcing federal copyright laws is unmistaken. In reviewing these factors, I recommend that Plaintiff's request for a permanent injunction and destruction of infringed copyrighted works in Defendant's possession be granted.

### C. Request for Attorney's Fees

Plaintiff seeks attorney's fees of $1,182.00 and costs in the amount of $450.00, for a total request of $1,632.00. In *Malibu Media, LLC v. Cowham*, Plaintiff also requested attorney's fees in the amount of $1,182.00. Equally, in *Malibu Media, LLC v. Doe*, Civ. No. CCB-15-1700, 2016 WL 245235, at *3 (D. Md. Jan. 21, 2016), Chief Judge Blake granted Plaintiff's request for attorney's fees plus costs of $1,632.00. Although these cases were brought in different states and had different attorneys of record, the charts included in the supporting declarations for fees were identical. *See Cowham*, 2014 WL 2453027; *Doe*, 2016 WL 245235; *see also generally* Attachment A. Accordingly, the Court scheduled the Hearing and requested additional

5

documentation in support of Plaintiff's request for attorney's fees. The Court was seeking clarification regarding this phenomena, along with documentation to support the business practices and record-keeping duties of Counsel.

1. Counsel's business practices

   a. Counsel's use and disposal of contemporary time records

At the Hearing, Counsel made clear that the majority of his practice consists of the litigation services he provides to Malibu Media. R at 10:11:55.[1] Counsel informed the Court that his method for tracking his billable hours consists of recording his time and tasks in a physical notebook/calendar. When preparing a declaration for attorney's fees, he refers to this calendar and the docket entries of the case. R. at 10:19:51, 10:46:28. Counsel asserted that for his work on all Malibu Media cases, he maintains his calendar until he submits a declaration in support of fees. He then disposes of his calendar on a quarterly basis. It is this practice which prevents the production of Counsel's time records for the Court's review. R. at 10:26:04. Counsel advises that he does not send invoices to Malibu Media for services rendered. R. at 10:44:40. Counsel stated that he only provides Malibu Media with statements for services rendered when submitting his declarations. R. at 10:44:37. As such, the Court is unable to consider any documentary support in order to clarify the previously mentioned replications of identical fee requests.

Counsel asserted that as of the date of the Hearing, he had no active cases for which he would have time records on his calendar. R. at 10:25:51. Immediately following the Hearing, the Court found one active case, namely *Malibu Media, LLC v. Doe*, 8:17-cv-00401-GJH. Therefore, on October 19, 2017, the Court ordered Counsel to "provide a copy of all calendar entries for…2017, which reflect attorney fee time notations to Malibu Media, LLC." ECF No.

---

[1] All references are to the record of the Hearing, held on October 19, 2017.

34, at 2. To date, Counsel has provided the Court with two examples of his time records by calendar. While the above referenced case did not result in an entry of default, the Court's Order requiring production of the calendar should have reflected entries for the drafting of the complaint, a motion for leave and several motions for extensions. None of these significant items appear in Counsel's time records, yet that are reflected in the docket entries for the case.

Counsel's Declaration in the present case omits any reference to services rendered between October 30, 2015 and March 6, 2017. Yet, the docket reflects significant work performed by Counsel during that time, namely Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, ECF No. 20. This filing was a rather time-consuming and substantive piece of legal work. R. at 10:53:42.

Counsel's purported practice of aligning his time records to the docket entries seems haphazard at best. Said practice does not align with the filings in the present case, nor does it align with the docket entries for the case in which time records have been preserved. At the end of the day, I have no confidence in believing that Counsel has followed this practice when preparing fee petitions for Plaintiff.

       b. Flat fee billing

Counsel indicated that his "calendar" entries are most often inputted after reviewing docket entries in bulk, stating for example that his review of complaints may be a review of "13, could be 30." R. at 10:29:10. Counsel stated that every action taken in the Malibu Media cases was done in bulk, and was recorded in his calendar at the end of each week. R. at 10:28:52. Counsel asserts that in Malibu Media cases, actions taken in each case are nearly identical to actions taken in every case where a default has occurred. R. at 10:35:10. He also made clear that he does not write off time entries. R. at 10:39:12. As such, Counsel states that he bills an average amount of time for each action taken across multiple cases, instead of billing specific

periods for each individual case. R. at 10:36–10:38. Effectively, the Court views this as a flat fee billing practice.

The final component of Plaintiff's request for fees relates to services provided by a paralegal. Counsel produced an Amended Declaration with the resume of Alejandra Albuerne attached. ECF No. 35-1. This resume indicates that Ms. Albuerne is a resident and paralegal in the state of Florida. *Id.* Counsel indicated that Ms. Albuerne is one of a network of paralegals across the country which Plaintiff's general counsel supplies to litigation counsel for the prosecution of Malibu Media cases. R. at 10:09:19. Additionally, Counsel indicated that while he met Ms. Albuerne once, she has never performed services for him in the state of Maryland. R. at 10:12:32. Finally, Ms. Albuerne's resume indicates that she has worked as a paralegal since 2009, being employed by Lipscomb, Eisenberg & Baker, PL and later by Pillar Law Group, APLC/Malibu Media, LLC.[2] ECF No. 35-1. Counsel indicated that both of these legal teams have previously served as general counsel for Plaintiff.[3] R. at 10:13:10.

The fees for services provided by Ms. Albuerne accounts for almost 80 percent of the total hours billed. ECF No. 29-5, at 2. Counsel stated that in preparing Counsel's Declaration, he had no direct supervision over Ms. Albuerne's work performed, and no way of knowing the record-keeping methodology that Ms. Albuerne employed. R. at 10:56:03. Counsel has not provided the Court with any contemporaneous time records to support the vast majority of the hours claimed by her. Accordingly, I find the request for fees generated by Ms. Albuerne to be unsupported.

---

[2] According to Counsel, the Pillar Law Group, APLC is located in Beverly Hills, California. R. at 10:14:10.

[3] Counsel noted that Malibu Media, LLC retains law firms to serve as general counsel, and supervisory counsel, over its national campaign. Counsel further indicated that Lipscomb, Eisenberg & Baker, PL, Pillar Law Group, APLC, and Lomnitzer Law Firm have all served in this capacity. R. at 10:16:32.

2. Identical fee requests in other cases

The Court is aware of at least 14 cases over the course of four years, ranging across seven states where Plaintiff is represented by eight different attorneys. In each instance, counsel presented identical charts in support of a request for attorney's fees following the entry of default. Only the dates of each task have been changed. *See* Attachment A. The Court finds troubling that each and every case in Attachment A reflects identical requests, identical hours billed, identical tasks of each attorney, identical tasks of the paralegal, and identical number of emails reviewed. There are even identical "catch-all" provisions requesting fees for blocks of unspecified activities labeled as "case management" and "case tracking." These categories typically represent the singular bulk of each fee request. There is only one plausible explanation for this multi-state event. General counsel is dictating the fees to be charged and the tasks to be recorded in each declaration seeking an award of fees. While billing judgment and/or flat fee billing may be acceptable, it should not be presented by way of a declaration under oath as if the time records are the result of a more typical and contemporaneous time keeping method.

Near the end of the Hearing, Counsel stated that it is actually Malibu Media's general counsel that prepares and sends the declarations in support of attorney's fees to local counsel for approval. R. at 11:06–11:09. It appears local counsel is merely "signing off" on fee petitions at the direction of general counsel and not based upon reliable business practices. While Counsel claims that all of his declarations are based on, and supported by, his "calendar" entries, nothing in his statements elucidates the discrepancies in the time-keeping records submitted in this and the other cases found.

None of the three legal teams mentioned by Counsel has appeared as litigation counsel in any of the 615 cases on record in the District of Maryland. CM/ECF Case Search "Malibu Media", *available at https://ecf.mdd.circ4.dcn/cgi-bin/iquery.pl?868097875632354-L_1_1-0-*

*6510126-pty-pla-plaintiff* (last visited Jan. 4, 2018). General counsel is actively preparing court filings, such as the declarations of local counsel in Maryland and beyond. R. at 11:08-11:16. The Court is concerned that Counsel is simply a conduit for legal work prepared by others who are not members of the bar of this Court or licensed to practice in Maryland.

### III. Conclusion

Plaintiff Malibu Media, LLC, for the last four years has initiated thousands of lawsuits against alleged copyright infringers nationwide. While no court has found that Plaintiff has filed a fraudulent suit, many courts have questioned whether Plaintiff is a "copyright troll," initiating suits against infringers as a profit-making scheme rather than as a deterrent, as legislators intended. *See Malibu Media, LLC v. Doe*, No. 15 Civ. 4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("copyright trolls," roughly defined as plaintiffs who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service.'). In the present case before this Court, that question is exacerbated by the presence of questionable business practices.

Based on the foregoing, it is my recommendation that the Court enter default judgment, GRANT Plaintiff's requested statutory damages in the amount of $24,000 as well as its request for permanent injunctive relief. However, I also recommend that Plaintiff's request for attorney's fees be denied.

January 5, 2018

CBD/gbc

/s/
Charles B. Day
United States Magistrate Judge